IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANDY LEWIS, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| v. ) | |
| ) | |
| PINGORA LOAN SERVICING, LLC; ) | |
| LOANCARE, LLC; and ANSELMO ) | JURY TRIAL DEMANDED |
| LINDBERG & ASSOCIATES LLC, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff MANDY LEWIS, through undersigned counsel, brings this complaint against Defendants PINGORA LOAN SERVICING, LLC ("Pingora"); LOANCARE, LLC ("LoanCare"); and ANSELMO LINDBERG & ASSOCIATES LLC ("Anselmo"), and alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages for violations of the Fair Debt Collection Practices Act (the "FDCPA"), the Truth in Lending Act ("TILA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

2. The claims stated herein stem from Defendants' repeated false claims of a default on a mortgage loan, false statements made in a foreclosure lawsuit, and collection of fees and other charges based on false claims of a mortgage default.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337, 15 U.S.C. § 1692k, and 15 U.S.C. § 1640(e). The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

1

4. Venue is proper in this District under 28 U.S.C. § 1391, as the events complained of occurred in this District.

**PARTIES**

5. Plaintiff Mandy Lewis is a natural person and resident of Illinois who resides at 614 East 87th Place, Chicago, Illinois (the "subject property").

6. Plaintiff purchased the subject property as her primary family residence.

7. Plaintiff is a "consumer" as defined by Section 1692a(3) of the FDCPA, Section 1(e) of ICFA, and Section 1601(i) of TILA.

8. Defendant Pingora is a Colorado limited liability company that does business in Illinois, including in this District.

9. Pingora is a debt collector as that term is defined in Section 1692a(6) of the FDCPA because it uses the mails and telephone in its business, the principal purpose of which is the collection of consumer debts, and because it regularly collects or attempts to collect debts owed to another.

10. Defendant LoanCare is a Virginia limited liability company that does business in Illinois, including in this District.

11. LoanCare is a debt collector as that term is defined in Section 1692a(6) of the FDCPA because it uses the mails and telephone in its business, the principal purpose of which is the collection of consumer debts, and because it regularly collects or attempts to collect debts owed to another.

12. Defendant Anselmo is an Illinois law firm organized as a limited liability company.

13. Anselmo is a debt collector as that term is defined in Section 1692a(6) of the FDCPA because it uses the mails and telephone in its business, the principal purpose of which is

the collection of consumer debts, and because it regularly collects or attempts to collect debts owed to another.

## FACTS SUPPORTING THE ACTION

14. On or about October 28, 2015, Plaintiff executed a promissory note and mortgage with Mid-America Mortgage, Inc. ("Mid-America") in the amount of $80,000 (the "subject loan").

15. The subject loan was secured by a first priority lien on the subject property.

16. Plaintiff used the proceeds of the subject loan for the purchase of the subject property as her primary family residence.

17. Mid-America was both the lender and the initial servicer for the subject loan.

18. Under the terms of the subject loan Plaintiff paid into an escrow account to cover the property taxes owed or anticipated for the subject property.

19. The taxes on the subject property increased to approximately $3,530 for the 2015 tax year.

20. This increase resulted in a much higher monthly escrow for the subject loan than Plaintiff had anticipated.

21. Nevertheless, Plaintiff timely made her mortgage payments, including the increased escrow amount.

22. In 2017, however, the real estate taxes for 2016 were reduced to approximately $1,502 for the 2016 tax year.

23. Despite the drastic reduction in taxes, however, Mid-America continued to demand the increased monthly escrow amount.

24. On August 9, 2017, Plaintiff sent a letter to Mid-America demanding that her monthly escrow be reduced to accurately reflect her reduced taxes and refusing to pay the inflated monthly escrow.

25. Plaintiff thus continued to make payments to Mid-America for the principal and interest due each month, plus a reduced escrow amount that accurately reflected the amounts owed for the reduced 2016 property taxes.

26. Mid-America refused to accept these payments as adequate monthly payments, declaring them to be incomplete "partial" payments. Mid-America's declaration was made solely based on its demand that Plaintiff continue to pay the inflated escrow amount that did not accurately reflect the amounts owed for the 2016 property taxes.

27. By letter dated On September 5, 2017, Mid-America, through its agent LoanCare, claimed that Plaintiff was in default on the subject mortgage.

28. Plaintiff continued to make monthly payments with the reduced escrow amount, and Mid-America continued to treat such payments as "partial" payments that were insufficient each month.

29. On March 14, 2018, Plaintiff sent a letter to Mid-America, again identifying problems with Mid-America demanding an inflated amount for escrow that was not tied to amounts owed for property taxes and insurance on the subject property and demanding a refund of the escrow surplus.

30. On June 1, 2018, LoanCare acquired the servicing rights for the subject loan, and became the servicer for the subject loan.

31. At the time that LoanCare became the servicer, Mid-America and LoanCare considered Plaintiff to have defaulted on the subject loan.

32. By letter dated July 12, 2018, LoanCare corrected its escrow errors, rescinded Mid-America's prior claims of partial payment, and stated that it would be issuing Plaintiff refund checks for amounts improperly collected from her.

33. In the July 12, 2018 letter, LoanCare also stated as follows:

> [A]s your monthly payment was decreased starting November 1, 2017, your monthly payments have been reapplied at the new lower amount. The funds available have been applied to your November 1, 2017 through July 1, 2018 monthly payments, with a remaining balance of $938.49 also being sent to you separately. <u>Your mortgage loan is current</u>.

(emphasis added).

34. LoanCare then sent Plaintiff a mortgage statement dated August 16, 2018, claiming that Plaintiff owed—above and beyond her regular monthly payment—a past due amount of $1,854.66 and fees and charges of $139.68, and demanding payment of these amounts. LoanCare also threatened to foreclose on Plaintiff if she failed to pay amounts that she did not owe.

35. LoanCare's statements were false. Plaintiff was current on her mortgage, and she did not owe any past due payments or any other fees or charges, and LoanCare could not lawfully foreclose.

36. LoanCare then sent Plaintiff a mortgage statement dated September 17, 2018, claiming that Plaintiff owed—above and beyond her regular monthly payment—a past due amount of $2,472.88 and fees and charges of $174.36, and demanding payment of these amounts. LoanCare also threatened to foreclose on Plaintiff if she failed to pay amounts that she did not owe.

37. LoanCare's statements were false. Plaintiff was current on her mortgage, she did not owe any past due payments or any other fees or charges, and LoanCare could not lawfully foreclose.

38. LoanCare then sent Plaintiff a mortgage statement dated October 16, 2018, claiming that Plaintiff owed—above and beyond her regular monthly payment—a past due amount of $3,091.10 and fees and charges of $209.04, and demanding payment of these amounts. LoanCare also threatened to foreclose on Plaintiff if she failed to pay amounts that she did not owe.

39. LoanCare's statements were false. Plaintiff was current on her mortgage, she did not owe any past due payments or any other fees or charges, and LoanCare could not lawfully foreclose.

40. LoanCare then sent Plaintiff a letter dated November 7, 2019, falsely claiming that Plaintiff was in default on her mortgage payments and that foreclosure proceedings had been initiated to collect the mortgage balance.

41. LoanCare then sent Plaintiff a mortgage statement dated November 16, 2018, purporting to accelerate the subject loan, claiming that Plaintiff owed a "reinstatement amount" of $4,347.63, and demanding payment of this amount. LoanCare also threatened to foreclose on Plaintiff if she failed to pay amounts that she did not owe.

42. LoanCare's statements were false. Plaintiff was current on her mortgage, she did not owe any past due payments or any other fees or charges, and LoanCare could not lawfully foreclose.

43. When LoanCare and/or Mid-America considered the subject loan to be in default, Pingora acquired servicing rights for the subject loan.

44. By letter to Plaintiff dated November 27, 2018, Anselmo stated that the amount outstanding on the subject mortgage was $76,553.55 as of November 8, 2018.

45. This statement was false, as the stated amount included fees, interest, and other charges that were improperly added to the subject loan and failed to credit all of Plaintiff's payments.

46. On December 26, 2018, Pingora, through Anselmo, commenced a foreclosure action against Plaintiff in Cook County Chancery Court, styled as *Pingora Loan Servicing, LLC v. Lewis, et al.*, Case No. 2018 CH 15957 (the "foreclosure action").

47. Pingora and Anselmo made false statements in the complaint filed in the foreclosure action, including as follows:

- That Plaintiff had failed to pay the monthly installments due on the subject loan;
- That the subject loan was due for the June 1, 2018 payment;
- That the outstanding balance of the subject loan was $76,149.61;
- That Plaintiff also owed interest, attorneys' fees, foreclosure costs, and expenses;
- Pingora is the mortgagee and holder of the subject loan; and
- Pingora was entitled to a judgment of foreclosure.

48. All of these false statements were included in the complaint that Pingora and Anselmo filed in the foreclosure action and caused to be served upon and delivered to Plaintiff.

49. During the pendency of the foreclosure action, Pingora and LoanCare continued to demand payment from Plaintiff of amounts that she did not owe.

50. On March 26, 2019, Pingora voluntarily dismissed the foreclosure action.

51. Despite dismissing the baseless and frivolous foreclosure action, LoanCare and Pingora continued to make false claims of default and demands for amounts that Plaintiff did not owe.

52. LoanCare sent Plaintiff a mortgage statement dated May 16, 2019, claiming that Plaintiff owed—above and beyond her regular monthly payment—a past due amount of $8,795.71 and fees and charges of $365.00, and demanding payment of these amounts.

53. LoanCare's statements were false. Plaintiff was current on her mortgage and she did not owe any amounts beyond her regular monthly payment.

54. LoanCare then sent Plaintiff a mortgage statement dated June 17, 2019, purporting to accelerate the subject loan, claiming that Plaintiff owed a "reinstatement amount" of $1,914.93 and fees and charges of $459.68, and demanding payment of these amounts.

55. LoanCare's statements were false. Plaintiff was current on her mortgage, the subject loan could not be accelerated, and she did not owe any amounts beyond her regular monthly payment.

56. Plaintiff became extremely frustrated and discouraged by the false statements and misconduct by Pingora, LoanCare, and Mid-America. Even after Pingora dismissed its baseless and frivolous foreclosure action against Plaintiff, LoanCare and Pingora continued to falsely claim that Plaintiff was in default on her mortgage and continued to assess improper charges on her loan account.

57. In order to avoid further harm from the misconduct of, Plaintiff decided to sell the subject property to satisfy the subject loan.

58. On July 17, 2019, Plaintiff closed on a sale of the subject property.

59. In connection with the sale, LoanCare issued a payoff letter stating that the payoff amount of $76,615.56.

60. This amount was falsely inflated. It included thousands of dollars in amounts that Plaintiff did not owe.

8

61. Plaintiff suffered significant damages proximately caused by Defendants' misconduct, including but not limited to financial harm from paying off more than the amount properly owed on the subject loan and severe emotional distress arising from defending herself against Defendants' false claims under threat of foreclosure.

62. Plaintiff is a single mother, and Defendant's misconduct threatened Plaintiff's ability to provide a safe and stable environment for her children.

**COUNT I – VIOLATIONS OF THE FDCPA**
**(AGAINST LOANCARE)**

63. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

64. § 1692e of the FDCPA states in relevant part that a debt collector, "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

65. LoanCare made false, deceptive and misleading representations in connection with the collection of a debt, in violation of § 1692e, in the mortgage statements and payment demands that it sent to Plaintiff in August, September, October, and November 2018.

66. § 1692e(5) of the FDCPA prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken."

67. LoanCare violated § 1692e(5) when it threatened for foreclose on Plaintiff, when, in fact, such action could not legally be taken.

68. § 1692e(10) of the FDCPA prohibits "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

69. LoanCare violated § 1692e(10) by making false, deceptive and misleading representations in connection with the collection of a debt in the mortgage statements and payment demands that it sent to Plaintiff in August, September, October, and November 2018.

70. Plaintiffs suffered damages proximately caused by Defendants' misconduct.

71. As a result of LoanCare's violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs, and reasonable attorney fees.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. grant judgment in Plaintiff's favor against LoanCare;

b. award Plaintiff statutory and actual damages in an amount to be determined at trial;

c. award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

d. award any other relief this Honorable Court deems equitable and just

### COUNT II – VIOLATIONS OF THE FDCPA
### (AGAINST ANSELMO)

72. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

73. § 1692e of the FDCPA states in relevant part that a debt collector, "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

74. Anselmo made false, deceptive and misleading representations in connection with the collection of a debt, in violation of § 1692e, in its November 27 letter and in the complaint filed in the foreclosure action.

75. § 1692e(10) of the FDCPA prohibits "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

76. Anselmo violated § 1692e(10) by making false, deceptive and misleading representations in connection with the collection of a debt in in its November 27 letter and in the complaint filed in the foreclosure action.

77. § 1692f of the FDCPA states in relevant part that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

78. Anselmo violated § 1692f by filing the complaint in the foreclosure action based on false premises in an attempt to collect the subject loan, which was unfair and unconscionable.

79. Plaintiffs suffered damages proximately caused by Anselmo's misconduct.

80. As a result of Anselmo's violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs, and reasonable attorney fees.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. grant judgment in Plaintiff's favor against Anselmo;

b. award Plaintiff statutory and actual damages in an amount to be determined at trial;

c. award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

d. award any other relief this Honorable Court deems equitable and just.

**COUNT III – VIOLATIONS OF THE FDCPA**
**(AGAINST PINGORA)**

81. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

82. § 1692e of the FDCPA states in relevant part that a debt collector, "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

83. Pingor made false, deceptive and misleading representations in connection with the collection of a debt, in violation of § 1692e, in the complaint filed in the foreclosure action.

84. § 1692e(10) of the FDCPA prohibits "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

85. Pingora violated § 1692e(10) by making false, deceptive and misleading representations in connection with the collection of a debt in the complaint filed in the foreclosure action.

86. § 1692f of the FDCPA states in relevant part that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

87. Pingora violated § 1692f by filing the complaint in the foreclosure action based on false premises in an attempt to collect the subject loan, which was unfair and unconscionable.

88. Plaintiffs suffered damages proximately caused by Pingora's misconduct.

89. As a result of Pingora's violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs, and reasonable attorney fees.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. grant judgment in Plaintiff's favor against Pingora;

b. award Plaintiff statutory and actual damages in an amount to be determined at trial;

c. award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

d. award any other relief this Honorable Court deems equitable and just.

### COUNT IV – VIOLATIONS OF TILA
### (AGAINST LOANCARE)

90. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

91. Plaintiff is a "consumer" as that term is defined in Section 1602(i) of TILA.

92. The subject property is single-family condominium, and qualifies as a "dwelling" as that term is defined in Section 1602(w) of TILA.

93. Defendant is a "servicer" and "creditor" as those terms are defined in Section 2605(i)(2) of RESPA and Section 1602(g) of TILA, respectively.

94. Section 1639g of TILA requires that "[a] creditor or servicer of a home loan shall send an accurate payoff balance. . . ."

95. 12 C.F.R. 1026.36(c)(3), states, in relevant part, as follows:

**In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date.**

96. The payoff statement provided by LoanCare did not contain an accurate statement of the payoff balance of the subject loan.

97. The payoff statement inflated the payoff balance of the subject loan.

98. Sections 1640(a) and 1641 of TILA allow Plaintiff to bring a claim for damages against LoanCare for violations of Section 1639g and 12 C.F.R. § 1026.36(c)(3).

99. LoanCare's failure to comply with TILA was intentional and willful.

100. Plaintiff suffered damages proximately caused by LoanCare's misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a. grant judgment in Plaintiff's favor against LoanCare;

    b. award Plaintiff actual damages pursuant to Section 1640(a)(1) of TILA;

    c. award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1640(a)(3) of TILA; and

    d. award any other relief this Honorable Court deems equitable and just.

### COUNT V – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT (AGAINST LOANCARE)

101. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

102. Plaintiff is a "consumer" and "person" as defined under Sections 1(c) and (e) of ICFA.

103. Section 2 of ICFA prohibits unfair or deceptive acts or practices and states, in relevant part, as follows:

**Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.**

104. LoanCare violated Section 2 of ICFA by engaging in unfair acts in the course of conduct involving trade or commerce when dealing with Plaintiff.

105. LoanCare made unfair misrepresentations to Plaintiff regarding the status of the subject loan, the amounts owed, and the application of Plaintiff's payments.

106. It was unfair for LoanCare to provide Plaintiff with conflicting and false information regarding the status of the subject loan and the balance of the subject loan.

107. It was unfair for LoanCare to false claim past-due balances and defaults by Plaintiff when Plaintiff was current on the subject loan.

108. It was unfair for LoanCare to refuse to communicate with Plaintiff clearly or respond to Plaintiff's disputes honestly or accurately.

109. LoanCare's communications and conduct were purposefully confusing, misleading, oppressive, and designed to maximize profits from a scheme to collect excess payments, charge fees, and willfully ignore errors in their servicing to extract additional amounts from Plaintiff and to avoid applying credits to Plaintiff's account.

110. LoanCare intended for Plaintiff to rely on its misrepresentations and unfair conduct.

111. LoanCare's conduct was willful, malicious, unfair, arbitrary, and designed to maximize LoanCare's profits at the expense of Plaintiff.

112. LoanCare's conduct offends public policy as it demonstrates a practice of aggressively pursuing collection of amounts not owed, charging unearned interest and fees to a borrower to make a profit, and forcing borrowers to make payments without properly crediting the payments.

113. All of LoanCare's conduct described herein occurred in the course of conduct involving trade or commerce.

114. An award of punitive damages is appropriate because LoanCare's conduct was outrageous, willful, wanton, and showed reckless disregard for the rights of Plaintiff during the entire course of her relationship with LoanCare.

115. Plaintiff suffered damages proximately caused by LoanCare's misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

   a. grant judgment in Plaintiff's favor against LoanCare;
   b. award Plaintiff actual and punitive damages in an amount to be determined at trial for the underlying ICFA violations;
   c. award Plaintiff reasonable attorneys' fees and costs pursuant to Section 10a(c) of ICFA; and
   d. award any other relief this Honorable Court deems equitable and just.

### COUNT VI – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT
### (AGAINST PINGORA)

116. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

117. Plaintiff is a "consumer" and "person" as defined under Sections 1(c) and (e) of ICFA.

118. Section 2 of ICFA prohibits unfair or deceptive acts or practices and states, in relevant part, as follows:

**Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise,**

**misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.**

119. Pingora violated Section 2 of ICFA by engaging in unfair acts in the course of conduct involving trade or commerce when dealing with Plaintiff.

120. Pingora made unfair misrepresentations to Plaintiff regarding the status of the subject loan, the amounts owed, and the application of Plaintiff's payments.

121. It was unfair for Pingora to provide Plaintiff with conflicting and false information regarding the status of the subject loan and the balance of the subject loan.

122. It was unfair for Pingora to false claim past-due balances and defaults by Plaintiff when Plaintiff was current on the subject loan.

123. It was unfair for Pingora to refuse to communicate with Plaintiff clearly or respond to Plaintiff's disputes honestly or accurately.

124. Pingora communications and conduct were purposefully confusing, misleading, oppressive, and designed to maximize profits from a scheme to collect excess payments, charge fees, and willfully ignore errors in their servicing to extract additional amounts from Plaintiff and to avoid applying credits to Plaintiff's account.

125. Pingora intended for Plaintiff to rely on its misrepresentations and unfair conduct.

126. Pingora's conduct was willful, malicious, unfair, arbitrary, and designed to maximize Pingora's profits at the expense of Plaintiff.

127. Pingora's conduct offends public policy as it demonstrates a practice of aggressively pursuing collection of amounts not owed, charging unearned interest and fees to a borrower to make a profit, and forcing borrowers to make payments without properly crediting the payments.

128. All of Pingora's conduct described herein occurred in the course of conduct involving trade or commerce.

129. An award of punitive damages is appropriate because Pingora's conduct was outrageous, willful, wanton, and showed reckless disregard for the rights of Plaintiff during the entire course of her relationship with Pingora.

130. Plaintiff suffered damages proximately caused by Pingora's misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. grant judgment in Plaintiff's favor against Pingora;

b. award Plaintiff actual and punitive damages in an amount to be determined at trial for the underlying ICFA violations;

c. award Plaintiff reasonable attorneys' fees and costs pursuant to Section 10a(c) of ICFA; and

d. award any other relief this Honorable Court deems equitable and just.


**Plaintiff Demands Trial by Jury.**

                                              Respectfully Submitted,

                                              /s/ *Daniel Brown*
                                              Daniel Brown (ARDC # 6299184)
                                              Main Street Attorney, LLC
                                              PO Box 247
                                              Chicago, IL 60690
                                              (773) 453-7410
                                              daniel@mainstreetattorney.com

                                              *Attorney for Plaintiff*

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that all Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of Plaintiff's claims. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that such Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of any Defendant.

By: /s/ *Daniel Brown*
    Daniel Brown

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorneys' fees have been assigned to counsel.

By: /s/ *Daniel Brown*
    Daniel Brown